As of today, Mr. Villegas has been in the custody of the Attorney General for 12 months, almost 9 of which are in excess of 4241's clear 4-month limit. The Section 4241 Commitment Order was violated when it expired on March 21, 2014 and was never properly extended. He was transferred back to Missouri, is that right? He was eventually transferred to Missouri, yes, that's correct. I thought he was brought back here. Am I getting confused with the other case? That was Mr. Morales. Mr. Villegas, once he was in the federal medical facility in Springfield, never left. He's been there since March 5th of this year. What has been stayed back there? What's the status of it? Did the director back there issue the certificate for dangerousness? The director did issue the certificate. So what happened is there was the 4246 Evaluation Court Order. We received a letter and a copy of the evaluation. The letter said, pursuant to this court order, we completed the evaluation. And that was also sent to the court in Missouri. And so as of right now, there is a court case in Missouri. There is a judge assigned and a public defender assigned. But there's no hearing set for the 4246 petition. I do know the public defender either was going to or has filed a motion to dismiss that petition. So what was the evaluation, do you know? He was, in fact, found dangerous. So what happens next there in Springfield? What the public defender told me was that usually by now they would have held a hearing. And at that hearing, they would have started to start the process about, you know, whether or not the court was going to find him dangerous. Because of this appeal and because of the issues raised therein, the public defender has taken a different route, has made the court there aware of this appeal, is trying to see if there's any way he can attack, not the order, he doesn't think he can attack the order, but the petition. So that's what's going on there. So by now there usually would have been a court date to begin the 4246 hearing on the petition. But because of the situation, the case is not going in the normal court. So there's no date, no schedule, no nothing? Nothing scheduled so far, no. So what are you attacking here now? I'm attacking both orders, the 4241 commitment order. It's both the violation of that order as well as the de facto extension without any of the proper findings, as well as the 4246 commitment order. Okay. So what relief do you want here? I would like this court to vacate both orders and order Mr. Villegas immediately released. But how can we do that given that there's been a finding of dangerousness by the institution now? Everything that's happened in this case has happened as a result of the original violation of the 4241 order. And so if that order was violated and was invalid and was improperly extended, then the 4246 order should never have been issued. But even so, the 4246 order was improperly issued in violation of the statute. Okay. So the first order you're saying was improper because, I mean, it was held for more than four months. And the issue there is whether or not the time runs from the date of hospitalization versus the date that the order was issued, right? Correct, Your Honor. Okay. Suppose we find that the four-month period runs from the date of hospitalization. Okay. Then suppose we were to find that. Then we would rule against you on that order, and we'd look at the second order. And the second order, the problem with that is that even looking from the date of hospitalization, he was held longer than the four-month period? Even if we look – let me answer that. There's two levels to that. Okay. What the statute says, what the language of the statute says, is that when a defendant has been found incompetent, the court shall order them into the custody of the attorney general. And the next sentence is that the attorney general shall take that person into his custody. And so even if the clock – even if that 120 days in the second sentence, you were to find that that begins when the person arrives, then that statutory command has now been violated, that the attorney general shall take that person into custody. Excuse me. But then the second problem would be – and so that would be a violation from the beginning, from November 22nd. It means that he was – the transfer to Missouri was delayed? Is that the violation? Your Honor, I would not call this a delay in transfer. This wasn't a martial issue. This was a situation where very purposefully Mr. Villegas was left in a local detention facility not receiving aid. Why wasn't he in custody of the attorney general? I hope the government can answer that. But my understanding is that because they have so many mentally incompetent defendants right now, there's just – they don't have enough federal medical facilities. They do not have enough beds. And so they quite purposefully leave these people in local detention facilities where they are not being treated until the attorney general sees fit to put them in federal medical facilities. If the attorney general controlled the detention facilities. That's correct, Your Honor. I think that the government has a lot of options here. They could open more federal medical facilities. They could contract with local private facilities. They could dismiss more cases. So what's your – and to your view, when is he taken into custody by the attorney general? What does the attorney general have to do? I don't understand your argument. The attorney general – when somebody is ordered for treatment pursuant to Section 4241, the point is that we are supposed to treat them to see if they can be restored for the purpose of going to trial. When someone is sitting in a local detention facility, they're not being treated. So that's your point is that he was sitting in the local facility without any treatment? That's part of it, Your Honor. Was he being medicated when he was there? When you say he wasn't getting any treatment, what does that mean? What this court has said in Mink and what happened in this case is that local detention facilities can maintain someone. They can do their best. Okay, but was he being medicated? No, not for the purpose of restoration. He wasn't getting medication? No, he was refusing medication, and he's consistently refusing it. Okay, so he was prescribed, but he was refusing it. That's correct. Which he could have done, presumably, once he was transferred to Springfield too. At the medical facilities, they have more options. They can do hearings about involuntary medication. They can request a cell hearing. Yeah, but it doesn't happen automatically. That's correct. So, let me see if I can understand your argument. So, you're saying the violation was of the second sentence because it says the court shall commit the defendant to the custody of the attorney general, and the next sentence says the attorney general shall hospitalize the defendant for treatment in a suitable facility. And you're saying you interpret that to mean the attorney general shall immediately hospitalize the defendant for treatment in a suitable facility. That's correct, Your Honor, and it's not just my interpretation. What this court said in Strong is that that initial time period, that's a 120-day cap for the purposes of restoration, and that it can be ended early if the evaluation ends early, but that is a cap. And to extend that cap, there has to be some information from the medical facility to justify an extension, saying that there is a substantial probability the person could be restored. What strikes me is when a number of situations we have with our government having insufficient resources to handle, and we've seen it over and over and over, veterans and many, many, many cases where they just don't have the resources to provide for that treatment right away. Do you agree with that? I do, Your Honor. I agree with that wholeheartedly, and I think that the government has a lot of options, but the only option it doesn't have is to take that out on criminal defendants and force their case to sit there to be unable to go forward, to be not able to get treatment. That's not a solution. So since the statute just says the attorney general shall take him into custody, it doesn't say immediately. And you know it's not going to happen instantaneously, right? Because not everybody is right next to Springfield, so it's going to take at least a couple of days. Okay, so you're reading a word into the statute that isn't there. So here's my question. Why isn't the real remedy in this the Speedy Trial Act? In other words, you convince the judge to not exclude the time that the person is being held in the local facility without getting the evaluation and so on, and if the judge disagrees with you, then eventually you are able to appeal that. Understood, Your Honor. This can't be a Speedy Trial Act argument because Mr. Vegas was found non-restorable. He will never go to trial. That's looking backward and knowing what you know now. I'm talking about looking forward and knowing what you knew then. Just because a criminal defendant has similar rights under two different statutes doesn't mean that they can't exert their rights separately. And so it will always be, perhaps if someone is found restorable, that they will have a chance to attack this at the end of their case. But if they're never found restorable, they'll never have that opportunity. They'll never be able to come to this court and seek review. I see that I'm running out of time. It's okay. Go ahead. No, I was just going to ask her to address the dangerousness order. That is, so he's back in Missouri, right? Correct. He never left Missouri. Right. And at some point, the district court in San Diego said, I want you to do a 42-46 hearing. Correct. Right? Oh, well, evaluation. Evaluation, 42-46. Yes. Now, what was wrong with that? Why is that? Why are you? What's the problem there? First, Your Honor, the district court at that point didn't have jurisdiction. Why not? I had filed a timely notice of appeal for the 42-41 order. Not only did she not find it frivolous, but she said that she saw room for interpretation. That doesn't make any sense because if the district court didn't have jurisdiction, then your guy would still be sitting there forever until somebody gets around with doing something. I mean, it seems to me it's a self-defeating argument. Well, no, Your Honor, because what I explained to the district judge at that final hearing was that under the statute, he was still there. The criminal charges had been dismissed because of reasons of mental incompetency. And under the statute, the federal medical facility, the director had the right at that point to issue the certificate. And if we look at the timeline, because Mr. Villegas had never left, there was a ton of time that he was sitting there not being evaluated in which the evaluation could have been completed. So basically your argument boils down to the district judge didn't have jurisdiction to do anything, but maybe the warden of the medical center did. Right, and the district judge appeared to agree with me. But isn't that foreclosed by Godinez-Ortiz? The difference in Godinez-Ortiz is that the district judge only ordered Mr. Godinez-Ortiz back to the facility so that the facility could decide if it wanted to do an evaluation, if appropriate, and gave a specific amount of time, 45 days, for the facility to make that decision. That wasn't what happened in this case. In this case, the district judge appeared to agree with me. Go ahead, go ahead. And her order didn't say, if appropriate, conduct this evaluation, you have 45 days to make the decision. But I thought what happened was, correct me if I'm wrong, because we had a related case, and I keep getting the circumstances mixed up. But I thought that in Villegas' case, the facility determined that he was not competent to stand trial and that he needed medication. And they wanted, they suggested the district court do a cell hearing because he wouldn't take his medication. And so they wanted an order forcing medication. And they asked the district court judge to do that here in San Diego, right? Is that what happened? That's completely correct, Your Honor. And then in response to that, the government said, ah, we're not going to go forward with the case anymore. Right. So what was the district court judge supposed to do? I made my arguments about the statute. And what was the director supposed to do back in? Are you asking me what would have happened if she had not ordered an evaluation? In other words, you're saying that the district judge didn't have any jurisdiction at that point. So what should the district judge have done? When the government came back and said, we're dismissing the case, what should the district judge have done at that point? If the district judge had done what I thought she was going to do, which was dismiss the criminal charges for reasons of incompetency, at that point the question would have been, you know, was this appeal moot and was now everything out in the Western District of Missouri? The logic of your position is that the answer would be yes, right? Because you say that the district judge didn't have any jurisdiction. The district judge should have just dismissed the case. That means there's no case in the Southern District of California anymore. But if the district court dismissed the case, then he should have been released because at that point there was no determination of dangerousness, right? I think that that's what likely would have happened at the federal medical facility, since at that point they hadn't decided to do a 42-46 evaluation, even though they had the time and the authority to do so. But because four days later, so she issued the order for dismissal and then four days later issued the sua sponte order for evaluation. Did she delay entry of the dismissal order? No, the dismissal order came out the next morning, right after the hearing. So then she then issued the 42-46 order? Four days after that. Four days after that. How did she have authority to do that? Yeah, it does seem she didn't have jurisdiction anymore over the case if she dismissed the case. I called the court to ask for a hearing about the order to put forth all of these arguments. I didn't put them forth at the original hearing because I didn't think I needed to. And I simply received a voicemail saying that there would be no further hearings and that she didn't think she had jurisdiction to have any further hearings. How could she both think she didn't have jurisdiction to have a hearing and think she could issue an order? I'm not sure, Your Honor. You didn't expect that order to come. In other words, it wasn't clued in at the hearing that you had on the dismissal of the indictment. Absolutely not. At the final hearing, she said, sounds good to me. She seemed to agree with my argument that she didn't have to do anything further. Let me ask you, I have one last question for you. So if she hadn't issued that 4246 order, and he's still back in Missouri. Correct. Could the director back there, could the facility back there go ahead and do, on their own, go ahead and do a 4246 determination? Under the statute, the director had multiple reasons why he could have. Because the client was there originally for 4241D, he could have. Because the case was dismissed purely for reasons of incompetency. Under the statute, he could have. He had plenty of authority to do so, and he also had plenty of time previously to do so. So then what's wrong with his certification order then? Because we know that he did it exclusively because of the order that my district judge issued. And he said so at the beginning of the risk evaluation. So, it was only because of that. He didn't do it on his own, even though he had the authority to do it on his own. Okay.  Okay. Thank you, Your Honor. Let's hear from the government. Thank you. Got a lot of material there. It's quite a movable desk, huh? May it please the Court. Michael Heyman for the United States. The first thing I'd like to do, Your Honors, is add a little bit more meat to what's happening in the Western District of Missouri, because there is some additional information that the Court should be aware of, which is this. When I was preparing for today's oral argument, I was looking at the docket from the Western District of Missouri and found that a motion to dismiss had actually already been filed. And I have copies of those, if Your Honors would like to see them. By the public defender there? By the public defender there. Okay. The government's opposition is due on December 1st. So there is a timeline that's in place. Did this just happen? Because I think we looked within the last day and couldn't see anything like this. The motion to dismiss was filed on the 20th of this month. Everything was under seal, which is also why it took me a little bit more time to access those documents. The 20th is today, right? Yeah. Do you want to file those under seal? Because obviously we can take judicial notice of that document. Yes, Your Honor. Do you want to move for us to take judicial notice? I would still move if Your Honors would entertain it at this point. We have to find out if there's some opposition to that, of course. We have to find out if it's opposed or not opposed. Okay. May I approach, Your Honors? No. No, head to the clerk. Thank you. And as Your Honors are reviewing that, as you'll see, a lot of the same issues that are addressed before this court are being taken up with the Western District of Missouri. So it looks like it raises the jurisdictional issue about whether the district judge had the authority to do the 42. It does raise the jurisdictional issue. But what I will say as to that point is for purposes of this appeal, we can assume that, assuming arguendo, that whatever the district judge here was improper, let's assume for argument that she had no jurisdiction and that she couldn't do anything once that interlocutory appeal was filed. The problem with defendant's argument is that 4246 acts independently. And the director there had an independent authorization and authority to Yes, but according, from looking at the record, he didn't act pursuant to his independent authority. He acted pursuant to the district court's order, which was issued after she dismissed the case. What happened specifically, and if we look at the sealed excerpts of records and the judge bench of angles order. Did you have to be really careful what you say since the courtroom is full and this is under seal? I will, Your Honor. Thank you. Did you have to have the courtroom, have people leave the courtroom? I think this particular issue is not sensitive. Well, okay. So this is something that's part of the public record in the case from the southern district? The particular order is not, no, Your Honor. And there's a statement that the judge made in it that I don't think is sensitive, but she said it in the context of a sealed order. So then you can't discuss it unless we have a sealed. What I can do, Your Honor, is simply refer the court to the excerpts without stating it in open court, if that's okay. All right. You tell us where to look. Okay. In the supplemental excerpts of record, page 3. And it is, I'm sorry, page 2. The line 22 is the reason this came about and the reason that this district judge issued that request effectively to the Missouri Springfield facility was because of what's stated there in line 22. But the important point here is that this was sort of an advisory request. The director didn't need it, and it was almost a comfort order by Springfield to ask this district judge to issue a request for an examination. It certainly wasn't necessary. So defense counsel says that the director of the medical facility acted only because there had been this order from the judge. So if the judge didn't have jurisdiction, if you take that out of the mix, what should we assume would have happened? I think that that is an assumption that's speculation, frankly, respectfully. I think what would have happened is had the judge said, I can't do anything here, the hospital would have gone to the western district of Missouri, which is where they typically do this. But I think since a case was pending, again, I'm speculating too, but it seems as though it was just most appropriate to go to the court that has already been dealing with these issues. At that point, the only reason that Mr. Villegas is being held in the Springfield facility at the time his case is dismissed was to determine whether he could be restored to competency. So when his case was dismissed, did the medical facility have any authority to do anything else but release him? The answer is yes, Your Honor. And once an individual is found nonrestorable under 4241D, 4246 then kicks in and says that person can be held pursuant to this dangerous determination until it's made. But there hadn't really been a true – the director of the facility was asking for a cell hearing to force him to have medication, right? Correct. So they were waiting to see if that was going to happen, correct? Isn't that why it all went back to San Diego? That's – well, that is definitely one of the things. They found him not competent. They determined, you know, what his problem was, and they said, well, he needs medication. I've taken it, so forced. And they sent it back to San Diego for a cell hearing. Among other things, I think there was also in that request or in the letter a finding that a dangerousness determination may be appropriate if recollection serves in a letter that originally went to the district court. I just don't see – once the case is dismissed, he's a native and citizen of Mexico, right? Correct, Your Honor. Wouldn't ordinarily he – wouldn't he have been removed to Mexico? That's not the case any longer, Your Honor. As a matter of course, ICE is not absolutely deporting individuals who have been deemed incompetent. So what are they doing with them? In some certain instances, the detainers are being lifted and individuals are released into the communities. But that's also why we have this backstop of 4246 to say, wait a minute, something like that shouldn't happen. There may be a gap period between the determination that somebody is non-restorable and the actual certificate that is then determining somebody to be dangerous. But that's why we have the 4246 remedy. So is there a general policy as to this that's – as to the practice that's going on here that the government's acting in accordance with? On what particular issue, Your Honor? On this period. Oh. This period of time and the general policy not deporting him or – The thing you just talked about, in other words, the fact that he wouldn't have been automatically deported. Well, the one – I don't want to speak to policy specifically unless I'm absolutely certain what I'm talking about here. But I can say that Godinez, the Ninth Circuit opinion, Godinez-Ortiz, does specifically give that authorization for the detention of individuals in that gap period between the finding of non-restorability and the determination of dangerousness. So to the extent Your Honor is asking, you know, sort of what the policy is, I think the policy is to follow Godinez, which says it is appropriate to hold somebody for an interim period until the determination is made. So in the communication back to the trial judge where the director of the medical facility had suggested a cell hearing, the director also made some reference to a 4246 determination, that it might be appropriate I think is the word used or something like that? Yes, Your Honor, and I'm looking at the – Yeah, I have it here. There is that suggestion, but that seems to suggest that they were expecting a court order. Yeah. Why would they do that when the statute gives them their own authority to conduct a 4246 determination? I'm speculating, Your Honor, but I would say comfort. Yeah. And that had the district judge not acted, they still would have – you know, I mean, there's nothing in the record to suggest that they would have done – not acted or acted otherwise. But what is clear is we do now have a petition that was filed as of October 1st in the Western District of Missouri where there has been a determination of dangerousness under 4246. Who files the petition? The United States, Your Honor. So the government filed the petition there? Correct, Your Honor, with the exhibit being a – What happens if we decide that the district court didn't have jurisdiction to issue the order? Does that unwind everything? If the court decides the district judge didn't have discretion to issue the order, I think it's sort of without effect because 4246 would have allowed them to have done – acted regardless of the issue. And remember, the order here is only an order for an examination. I want to be very clear that the examination itself is not even necessary under 4246. If we look at 4246, the language, there is a separate provision under subsection B which says prior to the date of the hearing, an examination can occur. But it is absolutely not necessary. The director could have done this with or without any – even an examination, per se. But the fact is he did it pursuant to an order that perhaps the district court judge didn't have jurisdiction to issue. That's the fact. It sounds like we're in a dangerous zone of sort of indefinite detention under the medical authorities without the courts having adequate supervision of what's going on. In response, Your Honor, there are remedies available. I mean, A, we've already had a dismissal. But B, as far as the detention goes, 4246G specifically says that habeas corpus remains unimpaired. So there's that remedy that the defendant can always avail themselves to, in addition to the fact that there is a case pending before the Western District of Missouri which will adjudicate this. And if there is no sufficient basis for holding that person, the Western District of Missouri will release them immediately. I guess your point is that under the language of the 4246A, it says the director facility in which a person is hospitalized certifies that a person in the custody or who has been committed to the custody of the attorney general under 4241D, and it goes on and on and on. So your point is as long as the defendant has been committed under 4241D, that's good enough. I would say yes, but I would also rely on the next phrase, which is critical here. Or against whom all criminal charges have been dismissed solely for the reasons related to the mental condition of that person. So it assumes that we have cases where individuals, the cases that the criminal charges have been dropped based on this issue, just like happened here, then what happens? We have somebody that the criminal case does not exist. We still have the authority under 4246 to hold somebody and create this determination. Well, how about now move forward a little bit to the 4241, where he was held at the local facility for about three months. Just over three months, right. Before he was transferred to Missouri. Now, that's a fairly significant amount of time. It is. What do we do with that? The issue, Your Honor, is no doubt that it is a significant amount of time. And the remedy here is, well, first of all, that's an issue that's not directly before this Court. But there are cases the United States submitted a request for judicial notice of where that particular issue will become ripe and before the Court. And then at that point, the Court will be required to determine. Well, I thought that issue was in front of us, because her argument is as soon as that the four-month period began to run as soon as the district court entered its order, committed to the order commits the defendant to the custody of the Attorney General for purposes of a 4241 evaluation. I respectfully disagree that that's the issue. The issue here is 4241D and whether, quote, unquote, hospitalization begins at the time of the entry of the original order or the time of actual hospitalization. Her argument is it should begin to run at the time of the order. The problem is we're conflating issues, because once you look at the Speedy Trial Act, there are actually two particular provisions that haven't been at all briefed by either side in this case as to whether time should be excluded during that period. I have to go back to 4246A, because I think there's a problem with your reading of that full, the full sentence, because it says, okay, if the director of a facility in which a person is hospitalized certifies that a person in the custody of the Bureau of Prisons, okay, and then we have the three conditions, sentence about to expire, committed to the custody pursuant to 4241D, or against whom all criminal charges have been dismissed. So you have to be in one of those categories solely for the reasons related to mental condition. So if he certifies that that person, and then you go to the next clause, is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage. So that's the dangerous determination, right? Correct. Okay. And that, so then he prepares the certificate and he sends it to the district court, right? Yes, Your Honor. In which the person is confined. But you're saying that this gives the director authority to hold him after, during the period of time after the criminal charges have been dropped and before any evaluation has occurred, which would lead to the certification? Yes, Your Honor. And I'll quote from Godinez, the Ninth Circuit opinion, which says, 4246 necessarily contemplates the temporary commitment of that person so that the director can conduct the evaluation necessary to make the certification decision. Okay. So where does Godinez find that language? Doesn't 4247 put time limits on when all of this is supposed to happen once the certification is issued? It does once the certification is issued. But that's why we also have the habeas relief in the event that the court's concern is nothing's happening during that gap period, there's the habeas relief. But here something has happened. There has been a petition on October 1st and there's been a motion to dismiss. 4247B, which is essentially the procedure, says that if you have one of these 4246 orders, the court may commit the person to be examined for a period of, it's either 30 or 45 days. And then there's somewhere else in that statute there's an overall time, something about 180 days. If nothing's happened within 180 days, you can come in and ask to be released. I think it's later on. It's like 4247H or something like that. So it's not like he would be sitting there indefinitely. There's some statutory control over the length of time. Obviously, somebody would have to be acting on his behalf, but he's going to have a public defender. Yes, Your Honor. I am looking at 4247H, which confirms that. I guess not to be shifting around too much, but returning back to 4241, I guess your point is under the Speedy Trial Act, that period of time that in this instance 30-plus days. I guess under all the circumstances, the district court judge could find good cause to exclude that time. Well, I have 4361 subsection 4 specifically says any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial is excludable. But the fact that the government doesn't have enough resources to examine people isn't a delay resulting from the fact that he's incompetent. It's a delay resulting from the fact that there hasn't been money appropriated. Right? I would say that it is related to the issue of mental incompetence. That's the case. They could hold him for four years before sending him. Agreed. Your argument proves too much. No. My argument certainly isn't four years, and it's certainly not an indefinite amount of time. But there are cases that have held that six months is appropriate. We don't have that here. We have just over three months. But, again, this is a ‑‑ Congress has said four months for the first part of the 4241 detention. That's for the hospitalization period alone. Yes. Congress seems to have, you know, four months seems to be about right to make that assessment. Right, Your Honors. I could certainly, if Your Honors requests, go into more detail as to sort of the issues that are the backdrop of that problem. However, that's not something that's been presented to this Court in a speedy trial context. Yes, I understand. All right. You're well over your time. We had a lot of questions about this, and we appreciate the argument. Thank you. Do you need a minute for rebuttal? Just a minute. We have something new to add to our figuring this out. I just wanted to point out that the language in the letter on the 4241 evaluation that talks about a cell hearing and a possible 4246 evaluation, if you compare that letter to the letter in Mr. Morales' case, which was submitted, it's exactly the same. It's a stock letter. It's a form letter. So there's nothing particularized as to Mr. Villegas about that letter and about the necessity for a 4246 evaluation. The other thing that I would say about the speedy trial issue, I maintain that it has to be parallel timelines, two separate rights, because now you're talking about people who may never be restored, and that's very similar to what happened in Jackson. But the second thing is that at the district court level, the government is arguing that none of that is excludable under speedy trial anyway, making it not impossible for them to argue, but basically saying that that's not a viable argument. So they're saying it's not excludable under speedy trial. It's not relevant under this statute. They're saying it is excludable. No, that's not what they're arguing at the district trial level. They're arguing that it's not excludable, that any amount of time is okay under the Speedy Trial Act. And so under both of those government theories, a criminal defendant could always indefinitely stay in a local detention facility without receiving treatment. All right. Thank you very much, counsel. U.S. v. Vegas will be submitted.
judges: Kennelly, Wardlaw, Paez